## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

NU IMAGE, INC.                           :
                                          :
          Plaintiff,                     :
                                          :
v.                                        :     Case No. 2:11-CV-545-FtM-29SPC
                                          :
DOES 1 – 3,932,                          :
                                          :
          Defendants.                    :
                                          :
                                          :
                                          :
_____          :

## JOHN DOE 1080'S AMENDED OMNIBUS MOTION TO DISMISS, SEVER, AND/OR QUASH THE SUBPOENA AND INCORPORATED MEMORANDUM OF LAW

Defendant, John Doe 1080, by and through undersigned counsel, files this Amended

Omnibus Motion[1] and moves this Court to: (first) dismiss the Defendants for improper joinder

and/or lack of personal jurisdiction; and/or (second) quash the subpoena directed at Comcast

Communications ("Comcast"). This Court should grant the relief requested.  Defendant requests

oral argument to assist this Court in fully considering the matter.  In support, the Defendant relies

on the following Memorandum of Law:

### I.      INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff, Nu Image, Inc., is a California corporation and professes to have its principal

places of business in California. (Complaint ¶ 7.)  Plaintiff neither alleges nor appears to transact

business in Florida or have any identifiable connections to Florida.  Plaintiff claims to be the

copyright holder of the video production titled *The Mechanic*. (Compl. ¶ 3.)  Plaintiff alleges that

---

[1]      Plaintiff's counsel has expressed that it has no objection to the amendment of John Doe 1080's Omnibus
Motion to Dismiss, Sever, and/or Quash the Subpoena [Doc. No. 177], which Defendant files for the primary
purpose of including the attachments to the Declaration of John Doe 1080 (Exhibit "A") which were  inadvertently
not included in the original electronic filing.

each of the 3,932 John Doe Defendants is liable for the infringement of and contributory infringement of Plaintiff's copyright in *The Mechanic*. (*See generally* Compl.)

Plaintiff has also issued an unknown number of subpoenas seeking information about the identities of the Defendants, including a Rule 45 subpoena to the Internet Service Provider ("ISP") Comcast seeking information regarding the identity of Doe 1080 ("Subpoena"). (*See* Exhibit to Declaration of John Doe 1080, which is attached hereto as Exhibit "A" and is incorporated herein at if set forth verbatim herein.)

## II.    ARGUMENT

### A.  Defendant has Standing to Move for Dismissal at This Time

In granting expedited discovery the Court accepted Plaintiff's assertions that it intends to name the ISPs subscribers, whose identifying information is the object of the subpoenas, as Defendants in this lawsuit. (Order, at 4 [Doc. No. 10] ("Plaintiff has sufficiently described the John Doe Defendants by listing the IP addresses assigned to *them* . . . .") (emphasis added); Mot. to Expedite, at 1, 12, 15 [Doc. No. 9] ("The only way that Plaintiff can determine Defendants' actual names is from the non-party [ISPs] *to which Defendants subscribe*") (emphasis added) ("The ISPs can identify each Defendant by name through the IP address") ("Defendants entered into a service agreement with the ISPs").)  If the Court's belief that Plaintiff intends to name the John Doe ISP subscribers as Defendants in this lawsuit is correct, then Defendant's motion to dismiss is timely.  While the plain language of the Federal Rules of Civil Procedure mandates that "the title of the action shall include the names of all the parties" (Fed. R. Civ. P. 10(a)) and that all summons "name the court and the parties" (Fed. R. Civ. P. 4(a)(a)(A)), the plain language of the Rules do not prohibit a fictitiously named defendant from moving for dismissal. In fact, the Rules specifically mandate asserting lack of personal jurisdiction and/or improper

venue by motion "before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). While it may be unusual for defendants to move for their dismissal before being served with process, it is also unusual rule that a lawsuit can only be filed and proceed against defendants who are named. *See* Fed. R. Civ. P. 10(a).

**B.** <u>**The Subpoena Should Be Quashed and/or Defendant Should Be Dismissed for Lack of Personal Jurisdiction**</u>

Defendant Doe 1080 does not reside in Florida and lacks any meaningful or continuing contacts with this forum. (*See* Exhibit "A", Declaration of John Doe 1080, which is incorporated herein as if set forth verbatim herein.)[2] Defendant lacks the regular and consistent contacts required to confer jurisdiction pursuant to Florida's long arm statue, Fla. Stat. § 48.193. Moreover, Defendant lacks the "minimum contacts" necessary to confer personal jurisdiction as set forth by the U.S. Supreme Court in *International Shoe Co. v. State of Washington*, 326 U.S. 316, 316 (1945) and its progeny.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute **and** (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (emphasis added); *see also Wallack w. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358, 1365 (M.D. Fla. 2003). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Mazer*, 556 F.3d at 1274 (citing *Posner v. Essex Ins.*

---

[2]    Evidence may be submitted by an unsworn declaration that is dated and subscribed by the declarant as true under the penalty of perjury in lieu of a notarized affidavit. 28 U.S.C. § 1746; *Trammel Real Estate Corp. v. Trammell*, 748 F.2d 1516, 1518 (11th Cir. 1984); *Carter v. Clark*, 616 F.2d 228, 229 (5th Cir. 1980); *F.T.C. v. Vacation Travel Club, Inc.*, No. 89-219-CIV-FTM-21D, 1996 WL 557831, at *3-4 (M.D. Fla. Jan. 24, 1996); *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F.Supp.2d 1213, 1217 n.1 (S.D. Fla. 2004).

*Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999).   A prima facie case is established only if

Plaintiff alleges enough facts to withstand a motion for directed verdict. *Control. Dev. Corp. v.*

*Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000); *SEC v. Carrillo*, 115 F.3d 1540, 1542 (11th

Cir. 1997).   It should also be noted that as Plaintiff is not a Florida resident, Florida's legitimate

interests in the dispute are "considerably diminished." *Asahi Metal Industry Co., Ltd. v. Superior*

*Court of California, Solano County*, 480 U.S. 102, 114 (1987).   Plaintiff's Complaint fails to

make out a prima facie case that this Court has personal jurisdiction over Doe 1080, or any of the

Defendants, and therefore the burden-shifting analysis which would otherwise follow (*Future*

*Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)) does not apply.

Even if Plaintiff had established a prima facie case for personal jurisdiction over Doe 1080,

Defendant's Declaration in support of this motion shifts the burden back to the Plaintiff. *Meier*

*ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

### 1. Florida's Long-Arm Statute

Florida's long-arm statute provides for both specific and general jurisdiction.   General

jurisdiction arises when a defendant is "engaged in substantial and not isolated activity" within

Florida, whether that activity "is wholly interstate, intrastate, or otherwise" and "whether or not

the claim arises from that activity." Fla. Stat. § 48.193(2); *see also Camp Illahee Investors, Inc.*

*v. Blackman*, 870 So. 2d 80, 85 (Fla. 2d DCA 2003) ("By its terms, section 48.193(1) requires

connexity between the defendant's activities and the cause of action.").   Plaintiff has failed to

allege any facts that would demonstrate that Defendant has engaged in any activity, substantial

or otherwise, within the state of Florida.   As set forth in the Declaration of John Doe 1080,

Defendant is neither a resident of Florida nor engaged in any activity, substantial or otherwise,

within Florida. (Exhibit "A".)

Plaintiff makes only the bare assertion that it has "information and belief, [that] each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District." (Compl. ¶ 5.)  Plaintiff has not presented this Court with any evidence of this claim.[3]  What Plaintiff has failed to explain, however, is that simple geolocation tools exist (and are freely available) which allow for the accurate determination of the general location of an IP address.  *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 40-41 (D.C.C. 2011); *see also Third World Media, LLC v. Does 1-1,243*, No. 10-00090-JPB-JES, Doc. No. 16, p. 5 n.2 (N.D. W.Va. Dec. 16, 2010) (discussing testimony presented to the court that "the physical location of any I.P. address can be determined from a simple Google search"); Kevin F. King, *Personal Jurisdiction, Internet Commerce, and Privacy: The Pervasive Legal Consequence of Modern Gelocation Technologies*, 21 Alb. L.J. Sci. & Tech. 61, 70-71 (2011) ("Today, leading geolocation technologies are . . . more than 97% accurate at the state level within the United States. . . . [S]erver-side technologies can pinpoint a user's location within a twenty to thirty mile radius." (internal citations omitted)); Kevin F. King, *Geolocation and Federalism on the Internet: Cutting Internet Gambling's Gordian Knot*, 11 Colum. Sci & Tech. L. Rev. 41, 57-63 (2010) (discussing how geolocation technologies allow for determining jurisdictional boundaries related to Internet activities).

---

[3]   "While jurisdictional discovery is liberally granted, a plaintiff is not entitled to take it solely because she requests it – she still must make the requisite showing of good cause.  Thus, a plaintiff must, *inter alia*, reasonably demonstrate that she can supplement her jurisdictional allegations through discovery." *Bond v. ATSI/Jacksonville Job Corps Ctr.*, 811 F.Supp.2d 417, 423-24 (D.D.C. 2011) (internal quotations and citations omitted).  "Where Plaintiff has made no effort to determine jurisdiction, the administration of justice is not served by requiring out-of-state recipients of subpoenas to bring challenges to the subpoenas in far-flung jurisdictions.  Further, '[f]rom a judicial economy perspective, it makes more sense for Plaintiff to bring its case against these [doe defendants] in the court where they have a good faith belief that venue and personal jurisdiction are attainable and the case can actually be prosecuted.'" *New Sensations, Inc. v. Does 1-1,474*, No. C-11-2770 MEJ, slip op., 2011 WL 7460100, at *3 (N.D. Cal. Dec. 7, 2011) (quoting *Nu Image, Inc. v. Does 1-23,322*, 2011 WL 3240562, at *5 (D.D.C. Jul. 29, 2011)); *also Patrick Collins, Inc. v. Does 1-2,590*, No. C-2766 MEJ, slip op., 2011 WL 7460101, at *3 (N.D. Cal. Dec. 7, 2011).

In recent years, several courts have taken explicit judicial notice of the increasing accuracy of geolocation technologies, suggesting that these technologies are now accurate enough for legal purposes. *See, e.g.*, *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 40-41 (D.C.C. July 29, 2011);[4] *Third World Media, LLC v. Does 1-1,243*, No. 10-00090-JPB-JES, Doc. No. 16, p. 5 n.2 (N.D. W.Va. Dec. 16, 2010); *American Civil Liberties Union v. Gonzales*, 478 F. Supp. 2d 775, 820 n.13 (E.D. Penn. 2007); *Hageseth v. Superior Court*, 150 Cal. App. 4th 1399, 1423 (Cal. Ct. App. 2007).  Recently, the Eleventh Circuit held that a district court did not abuse its discretion by admitting testimony relating to the geolocation of IP addresses based on an online database or Internet search. *U.S. v. Cray*, 450 Fed. Appx, 923, 934 (11th Cir. 2012).

In *Nu Image, Inc. v. Does 1-23,322*,[5] the court extensively discussed geolocation services and concluded that they were sufficient to establish "a good faith basis to believe a putative defendant *may* be [a resident of the court's jurisdiction] if a geolocation service places his/her IP address within the [jurisdiction], or a city located within 30 miles of the [jurisdiction]." *Id.* at 41. The court made a point to note that even evidence presented by the Plaintiff to discredit geolocation services stated that "[e]ven when not accurate, though, geolocation can place users in a bordering city, . . . [t]his happens because a common method for geolocating a device is referencing its IP address against similar IP addresses with already known locations." *Id.* at 40-

---

[4]     Followed by: *West Coast Productions, Inc. v. Does 1-1,434*, --- F.R.D. ---, Civ. No. 11-55 (JEB/JMF), 2012 WL 336174, at *3 (D.D.C. Feb. 3, 2012); *Axel Braun Productions v. Does 1-2,823*, Civ. No. 11-56 (EGS/JMF), slip. op., 2012 WL 177856, at *3 (D.D.C. Jan. 19, 2012); *Exquisite Multimedia, Inc. v. Does 1-336*, Civ. No. 11-1976 (RWR/JMF), slip op., 2012 WL 177785, at *2-3 (D.D.C. Jan 19, 2012); *Patrick Collins, Inc. v. Does 1-72*, Civ. No. 11-58 (RMU/JMF), slip. op., 2012 WL 177864, at *3 (D.D.C. Jan 19. 2012); *SBO Pictures, Inc. v. Does 1-87*, Civ. No. 11-1962 (JDB/JMF), slip op., 2012 WL 177865, at *2-3 (D.D.C. Jan. 19, 2012); *People Pictures, LLC v. Group of Participants in Filesharing Swarm Identified by Hash: 43F4CFD05C115EE5887F680B0-CA73B1BA18B434A*, --- F.Supp.2d. ---, Civ. No. 11-1968 (JEB/JMF); 2011 WL 6758462, at *3 (D.D.C. Dec. 23, 2011).

[5]     An action brought by the present Plaintiff, Nu Image, Inc., which was also then represented by Dunlap, Grubb, and Weaver, PLLC.

41 (quoting *How accurate is GeoLocation?* What Is My IP Address, http://whatismyipaddress.com/geolocation-accuracy).

Here, the use of these geolocation tools demonstrates that Defendant's IP address is located outside of Florida. (*See* Exhibit "B", Affidavit of David Tamaroff, which is incorporated herein as if set forth verbatim herein.)   Accordingly, Plaintiff has failed to establish general jurisdiction over Defendant.   As such, Defendant should be dismissed from this case and the Subpoena should be quashed for lack of personal jurisdiction.

Specific jurisdiction arises over a non-resident defendant only when a defendant engages in certain enumerated acts. Fla. Stat. § 48.193(1).  The following acts, *inter alia*, convey specific personal jurisdiction: "(1) [o]perating, conducting, engaging in, or cayring on a business or business venture in Florida or having an office or agency in Florida; (2) committing a tortious act in Florida; (3) owning, using, possessing, or holding a mortgage or other lien on any real property in Florida; (4) contracting to insure any person, property, or risk located within Florida at the time of contracting; (5) causing injury to persons or property within Florida arising out of an act or omission by the defendant outside of Florida, if, at the time of the injury either the defendant was engaged in solicitation or service activities within Florida or products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within Florida; and (6) breaching a contract in Florida by failing to perform acts required by the contract to be performed in Florida." Fla. Stat. § 48.193(1).[6]

Plaintiff, a California corporation with its principal place of business in California (Compl. ¶ 7), merely asserts that it believes "a substantial part of the acts of infringement

---

[6]    Additional enumerated acts recognized by Florida's long-arm statute include acts with respect to proceedings for alimony, child support or division of property in connection with a divorce proceeding (Fla. Stat. § 48.193(1)(e)) and certain acts relating to paternity actions (Fla. Stat. § 48.193(1)(f)).  Such acts are wholly unrelated to Plaintiff's claim for copyright infringement.

complained of herein occurred in this District." (Compl. ¶ 5.)  This bare assertion is insufficient for Plaintiff to fulfill its burden of establishing this Court's personal jurisdiction over Defendant, a non-resident of Florida.  As the magistrate juudge recognized, Plaintiff appears to be traveling under the theory that Defendants caused economic injury to Plaintiff in the Florida arising from an act or omission outside of Florida. (*See, e.g*., Report and Recommendation, at 5 [Doc. No. 31].) Consequently, as the magistrate judge correctly determined, Plaintiff has failed to adequately allege a basis for jurisdiction under Florida's long-arm statute because economic injury in Florida, without more, is insufficient to establish personal jurisdiction. *See, e.g.*, *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 629 (11th Cir. 1996).  Additionally, while Plaintiff likely contends that alleged copyright infringement could be a basis for jurisdiction as a tortious act committed in Florida, such application is not warranted here because Plaintiff does not reside in Florida and therefore cannot have experienced injury in this state. *See Licciardello v. Lovelady*, 544 F.3d 12380, 1283 (11th Cir. 2008).

As set forth in John Doe 1080's supporting Declaration, and never contradicted by Plaintiff, the Defendant: does not reside or work in Florida; has never operated, conducted engaged in or carried on a business or business venture in Florida; has never committed a tortious act in Florida; never owned, used, possessed or held a mortgage or other real property lien in Florida; never contracted with any person or property within Florida; never caused injury to persons or property within Florida; nor ever breached a contract in Florida. (*See* Exhibit "A".) Accordingly, this Court lacks personal jurisdiction over Defendant pursuant to Florida's long-arm statute.  As such, Defendant should be dismissed from this case and/or the Subpoena should be quashed.

### 2.  Constitutional Standard

Assuming, *arguendo*, that Plaintiff were to establish jurisdiction over Defendant pursuant to Florida's long-arm statute, there is still an insufficient relationship between Plaintiff's claim and the Defendant's contacts (or lack thereof) with Florida to justify this Court's exercise of jurisdiction over Defendant.  It is a fundamental principal that defendants should not be forced to have their interests adjudicated in a jurisdiction within which the defendant has no contact.  The basic requirement of personal jurisdiction "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The determination of whether personal jurisdiction over a non-resident defendant comports with the due process clause of the federal Constitution is a two-prong inquiry.  First, the Court must decide whether the defendant has established "minimum contacts" with Florida. *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (citing *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir. 1988) (quoting, *International Shoe Co. v. State of Wash*, 326 U.S. 310, 316 (1945))).  If the requisite minimum contacts do exist, the Court must then determine if the exercise of personal jurisdiction over the Defendant would offend "traditional notions of fair play and substantial justice." *Id.*  The minimum contacts analysis "cannot simply be mechanical or quantitative," but instead must depend on the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *International Shoe,* 326 U.S. at 319.

As a threshold matter, Plaintiff does not reside in Florida and therefore could not have experienced injury in this state as a result of any Defendants' out of state actions.  Furthermore, as illustrated by the Declaration of John Doe 1080, any apparent contact that Defendant has with

Florida is far from "continuous and systematic." *See* Exhibit "A"; *cf. Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). Plaintiff argues that the alleged activity took place over the Internet, and therefore, "unlawful distribution occurred in every jurisdiction in the United States, including [Florida]." (Compl. ¶ 5.) In other words, Plaintiff reasons that because the alleged conduct involves Internet use, minimum contacts are essentially established on a national level. However, the rise of the Internet does not destroy fundamental, constitutional requirements. *See GTE New Media Servies Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1346 (D.C. Cir. 2000). In *GTE*, the plaintiff asserted that the personal jurisdiction requirement was satisfied because the defendants acted in concert to redirect users in the District of Columbia away from the plaintiff's website to another website owned by them defendant. *Id.* at 1346. Rejecting the plaintiff's theory, the Court explained that it was insufficient for the plaintiff to demonstrate personal jurisdiction "based solely on the ability of the District resident to access defendants' websites," in particular when there was no evidence of financial harm to the plaintiff in the District of Columbia. *Id.* at 1349. The court further stated:

> Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. . . . In the context of the Internet, GTE's expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence. Our sister courts have not accepted such an approach, and neither shall we.

*Id.* at 1350.

Similarly, the Fourth Circuit has concluded that the mere act of hosting infringing copyrighted material on an out-of-state ISP was insufficient to justify exercise of personal jurisdiction over a defendant ISP in a Maryland court. *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002); *see also Sinclair v. TubeSockTedD*, 596 F.

Supp. 2d 128, 133 (D.D.C. 2009) (holding that a defendant's posting of statements to the Internet that could then be downloaded and viewed in the District of Columbia was insufficient to establish personal jurisdiction). Accordingly, merely alleging that Doe 1080 and the other out of state Defendants used the Internet to upload and download the subject material is insufficient to establish specific personal jurisdiction.

Plaintiff's allegations do not satisfy the minimal requirements for personal jurisdiction under the Constitution. As such, Defendant should be dismissed and the Subpoena should be quashed. Holding otherwise would allow for *foreign* copyright holders to manipulate this Court in order to compel *foreign* ISPs to disclose subscriber information about *foreign* customers.

## C. <u>Defendant Should Be Dismissed and/or Severed Due to Misjoinder</u>

Plaintiff's Complaint improperly joined 3,932 unrelated individuals as Defendants. As such, John Does 2 through 3,932 should be severed and dismissed from the instant lawsuit pursuant to Fed. R. Civ. P. 21. Joinder is appropriate under the Federal Rules only if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). However, even if these parameters are met, joinder is not necessarily mandatory. The Court may order separate trials to protect any party against "embarrassment, delay, expense, or other prejudice." *See* Fed. R. Civ. 20(b). Where misjoinder occurs, the court may, on just terms, add or drop a party so long as "no substantial right will be prejudiced by severance." *AF Holdings, LLC v. Does 1-97*, No. C-11-3067-CW(DMR), slip op., 2011 WL

2912909, at *2 (N.D. Cal. July 20, 2011) (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)).

### 1. Plaintiff's Claims Do Not Arise Out of "the Same Transaction, Occurrence, or Series of Transactions or Occurrences"

Plaintiff would like this Court to believe that the mere use of BitTorrent Protocol by the individual Defendants is sufficient to sustain their joinder in this action.  However, an individual Defendant's alleged use of BitTorrent Protocol does not necessitate the inference that he or she had any interaction with any of the other 3,931 Defendants in this case.  Numerous courts handling similar cases have found that alleged copyright infringement through the use of BitTorrent Protocol is insufficient to sustain permissive joinder, both in the Eleventh Circuit[7] and beyond.[8]

As was noted in an analogous case recently decided in the Southern District of Florida:

> Under the BitTorrent Protocol, it is not necessary that each of the Does . . . participated in or contributed to the downloading of each other's copies of the work at issue – or even participated in or contributed to the downloading by any of the [other] Does . . . . Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm.  The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world.

---

[7]    *See Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fla. 2011) (severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.D.R. 669 (S.D. Fla. 2011) (severing defendants); *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939, slip op., 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (order severing defendants); *Patrick Collins, Inc. v. Does 1-35*, No. 1:11-CV-02940 (N.D. Ga. Dec. 19, 2011) (order severing defendants); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-2941-CAP (N.D. Ga. Dec. 5, 2011) (order severing defendants).

[8]    *See, e.g., Third Degree Films v. Does 1-3577*, No. C11-02768 LB, slip op., 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, No. 2:11-CV-345, slip op., 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (severing defendants); *K-Beech, Inc. v. Does 1-78*, No. 5:11-CV-05060 (E.D. Penn. Oct. 3, 2011) (order severing defendants).

*Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672, 675 (S.D. Fla. 2011)

(quoting *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d. 1150, 1164 (N.D. Cal. Aug.

23, 2011)).

District courts in the Eleventh Circuit and beyond have reasoned that John Doe

defendants in analogous lawsuits were improperly joined based the large time span between each

defendant's alleged sharing of the file. *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939-TWT,

slip. op., 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (time span of more than 4 months);

*K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-02941-CAP, at 6 (N.D. Ga. Dec. 5, 2011) (time span

of almost 3 months); *Liberty Media Holdings, LLC*, 277 F.R.D. at 675 (time span of 2 months);

*Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. at 671 (time span of two

months); *Hard Drive Prods., Inc.*, 809 F. Supp. 2d 1150, 1163 (time span of six weeks).

In *Raw Films, Inc.*, the court found that "[d]ownloading a work as part of a swarm does

not constitute 'acting in concert' with one another, particularly when the transactions happen

over a long period." 2011 WL 6840590, at *2; *see also K-Beech, Inc.*, No. 1:11-CV-02941-CAP,

at 4 (N.D. Ga. Dec. 5, 2011) (order granting motion to sever).   In explanation of that finding, the

court reasoned that:

> [t]he differing dates and times of each Defendant's alleged sharing
> do not allow for an inference that the Defendants were acting in
> concert.  While the Defendants may have used the same peer-to-
> peer system, the Complaint does not allege that they were sharing
> with each other.  For example, Doe 4, who is alleged to have been
> in the swarm on July 13, 2011, is unlikely to have been in the
> swarm at the same time as Doe 5, who is alleged to have been in
> the swarm on March 4, 2011.

*Id.* at *2; *see also K-Beech, Inc.*, No. 1:11-CV-02941-CAP, at 5-6 (N.D. Ga. Dec. 5, 2011).

Plaintiff concedes that in order for one Defendant to have shared a file with another

Defendant, both would need to be "online simultaneously." (*See* Mot. to Expedite, at 7-8 [Doc.

No. 9]; Ex. A to Mot. to Exp. ¶ 8 [Doc. No. 9-1]; Ex. B to Mot. to Exp. ¶ 5 [Doc. No. 9-2].) However, Plaintiff does **not** allege that Defendants were sharing the file simultaneously. Plaintiff's evidence shows that there were large time spans between the different Defendants' alleged sharing of the file. (*See* Compl. Ex. A.)

Exhibit A to the Complaint shows that these transactions or occurrences happened throughout a time span of more than FIVE (5) weeks.  (S*ee* Compl. Ex. A.)  Specifically, Plaintiff alleges only that John Doe 1080 was online and engaged in copyright infringement on July 13, 2011 at 02:26:02 AM GMT. *See Id.*  Only 56 of the other 3,931 Defendants in this case (1.4 %) are alleged to have been online and engaged in file sharing on July 13, 2011. *See Id.* Only 13 of the other 3,931 Defendants in this case (0.3 %) are alleged to have been online one hour before or after the time of John Doe 1080's alleged infringement.  Moreover, only 4 of the other 3,931 Defendants (0.1 %) are alleged to have been online between 02:00:00 AM GMT and 03:00:00 AM GMT on July 13, 2011.  Plaintiff has failed to allege that John Doe 1080 was simultaneously online and using BitTorrent Protocol with any of the other 3,931 Defendants as would be necessary for them to engage in file sharing with each other.

Rather than admit that Defendants were not using BitTorrent Protocol at the same, or even similar, times, Plaintiff instead focuses on its allegation that the Defendants were sharing the same piece (as denoted by hash tag) of its copyrighted work.  (*See* Compl. ¶ 12.)  However, this allegation does not warrant the implication that Defendants exchanged any piece of the relevant file with each other or actually acted in concert with one another. *See, e.g.*, *MCGIP, LLC v. Does 1-149*, No. C 11-02331 LB, slip op., 2011 WL 4352110, at *3 (N.D. Cal. Sept. 16, 2011) (finding misjoinder where the plaintiff failed to show that any of the defendants actually exchanged any piece of the seed file with one another); *Boy Racer, Inc. v. Does 1-60*, No. C 11-

01738 SI, slip op., 2011 WL 3652521, at *4 (N.D. Cal. Aug. 19, 2011) (finding misjoinder because "Plaintiff [did] not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant").  Plaintiff's allegations that Defendants committed the same type of violation in the same way simply does not equate to participation in the same transaction, occurrence, or series of transaction or occurrence. *See LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992, at *7 (E.D.N.C. Feb. 27, 2008). This basis alone is sufficient to warrant the severance of the Defendants.

### 2. Joinder Will Prejudice the Defendants Moving Forward and Result in a Lack of Judicial Economy

"Among the factors to be considered by the court in exercising its discretion under Rule 21 are whether . . . judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof are required for the separate claims." *Hartley v. Clark*, No. 3:09cv559/RV/EMT, 2010 WL 1187880, at *4 (N.D. Fla. Feb. 12, 2010); *see also*, 7 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1652, at 396 (3d ed. 2001) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objective of the rule, but will result in prejudice, expense or delay").

Joinder of 3,932 unrelated Defendants in this case will result in severe practical problems moving forward.  The Defendants, proceeding both *pro se* and through counsel, will likely assert different legal and factual defenses that apply to them particularly, or only a fraction of the 3,932 Defendants.  Based on an individual Defendant's circumstances, he or she may be asserting legal defenses based on copyright invalidity, de minimis copying, fair use, grant of permission or a license, copyright misuse, acquiescence, unclean hands, and/or estoppel.  Further, the individual

Defendants are likely to put forward a variety of factual defenses and will identify different witnesses.  As one court noted in a similar case:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) Defendants.

*BMG Music v. Does 1-203*, No. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

As the case proceeds, Plaintiff is likely to make further discovery requests against each individual Defendant that will further increase complexity and cost.  This is the exact situation in which the Northern District of California found itself when it failed to sever the mere 52 defendants in a similar case:

> [Plaintiff] would require nothing less than an inspection of the subscriber's electronically stored information and tangible things, including each of the subscriber's computer and computers of those sharing his internet network. . . . Presumably, every desktop, laptop, smartphone, and tablet in the subscriber's residence, and perhaps any residence of any neighbor, houseguest or other sharing his internet access, would be fair game.   Beyond such an inspection, [Plaintiff] might require still more discovery, including interrogatories, document requests and even depositions.

*Boy Racer, Inc. v. Does 1-52*, No. 11-CV-2329-PSG, at 4 (N.D. Cal. Sept. 13, 2011) (order denying further discovery).  The courthouse circus which will likely ensue if the Defendants are not severed will result in inefficiency for the Court and prejudice the Defendants moving forward. *See, e.g.*, *Pac. Century Int'l Ltd. v. Does 1-101*, No. C-11-02533-(DMR), slip op., 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) ("An internet based copyright infringement case with at least 101 defendants would prove a *logistical nightmare*." (emphasis added)).

Failure to sever at this stage in the litigation will so severely economically prejudice the nearly four-thousand Defendants in this case that most would be unable to afford pursuing valid

defenses and be forced into accepting settlement offers. *See Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 233 (M.D. Tenn. 2001) ("If joined in one action, hundreds of Defendants will be subject to an overwhelming onslaught of materials and information unrelated to the specific claims against them – all of which they must pay their attorneys to review."). To prevent prejudicing the Defendants and maximize judicial economy, this should sever and dismiss the all but the first Defendant from this case.

### D. **Plaintiff's Subpoena is Improper and Must be Quashed**

A Rule 45 subpoena must fall within the scope of proper discovery under Federal Rule of Civil Procedure 26(b)(1), which limits discovery to "any matter, not privileged, that is relevant to the claim or defense of any party in the pending action and is reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). If a subpoena falls outside the scope of permissible discovery, the Court has authority to quash or modify it upon a timely motion by the party served, or a party challenging the relevancy of the records sought. *See* Fed. R. Civ. P. 45(c)(3). The Subpoena issued to Comcast (attached as Exhibit "2" to Exhibit "A" to this Motion) should be quashed pursuant to Rule 26 of the Federal Rules of Civil Procedure because the Court was mislead by Plaintiff's *ex parte* request for early discovery that produced the Subpoena, for which Defendant was never given notice or an opportunity to be heard.

Discovery is normally barred prior to the Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation or by court order"). Courts apply this rule even when considering subpoenas issued to non-parties. *See Crutcher v. Fidelity Nat'l Ins. Co.*, Civ. No. 06-5273, 2007 WL 430655, *2 (E.D. La. Feb. 5, 2007). A plaintiff is only permitted to file a lawsuit against unnamed defendants when it is clear

that limited discovery will uncover the defendant's identity so that he can be named in a reasonable period of time. (Mot. to Exp., at 14 [Doc. No. 9] (quoting *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 277 (N.D. Cal. 2002)).)

Plaintiff has misled this Court by suggesting that it will be able to identify the alleged infringers through issuance of subpoenas to Comcast and other ISPs.  Rather, an IP address can only identify a subscriber to an ISP; it does not identify the specific identity of the person that actually engaged in the alleged infringing activities.[9]  To successfully identify the claimed infringers, Plaintiff would need extensive additional information that cannot be gleaned from the information requested by the Subpoena.  Indeed, Plaintiff's inaccurate portrayal of the facts required to identify infringers was exposed in a similar lawsuit, *Boy Racer, Inc. v. Does 1-52*, No. 11-CV-2329-PSG (N.D. Cal. Sept. 13, 2011) (order denying further discovery; order to show cause).

In *Boy Racer*, after issuing a substantially similar subpoena to the one at issue in this case and representing to the court that each IP address corresponded to a defendant, the plaintiff was forced to admit that the subscriber information linked to an IP number was legally insufficient to identify a defendant and really just the starting point for a far more invasive investigation.  In rejecting that plaintiff's attempt to expand its discovery beyond its initial representations, the court quoted the key admissions to the plaintiff's argument as follows:

> While Plaintiff has the identifying information of the subscriber, this does not tell Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff will name as the Defendant in this case.  It could be the Subscriber, or another member of his

---

[9]   This was recognized by the magistrate judge who reasoned that "[i]f as movants have asserted, their internet accounts were used by third parties to unlawfully infringe Plaintiff's copyrighted film, then it is those parties, rather that the movants themselves, who should properly be named as defendants." (Report & Recommendations, at 3 [Doc. No. 39] (quoting *West Coast Productions, Inc. v. Does* 1-5,829, 275 F.R.D. 9, 14 (D.D.C. 2011)).)

household, or any number of other individual who had direct access to Subscribers network.

[Accordingly:]

Plaintiff plans to request a limited inspection of Subscriber's electronically stored information and tangible things, such as Subscriber's computer and the computers of those sharing his Internet network, for the purpose of finding the individual that unlawfully violated Plaintiff's copyrighted works by uploading/downloading the file referenced BitTorrent, or to see whether such information has since been erased contrary to instructions by Verizon Online and Plaintiff's attorneys.

*Id.* at 4 (withdrawing its prior order granting limited early discovery and denying further discovery requests because "[p]resumably, every desktop, laptop, smartphone, and tablet in the subscriber's residence, and perhaps any residence of any neighbor, houseguest or other sharing his internet access, would be fair game") (internal quotes and citations omitted).

In *VPR Int'l v. Does 1-1017*, the court came to a similar conclusion and denied the plaintiff's motion for expedited discovery. *VPR, Int'l*, 2:11-CV-02068-HAB-DGB (C.D. Ill. April 29, 2011).  The court noted that subscriber information requested from an ISP would be insufficient to identify an infringer who "might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *Id.* at 2.  To illustrate this fact, the court noted an instance involving a raid by federal agents on a home that was linked to downloaded child pornography.

The identity and location of the subscriber were provided by the ISP.  The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid.  Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material.  Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection form the State University of New York).

*Id.* at 2 (citing Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/). The court opined as to the plaintiff's true motives. *Id.* at 3 ("Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case.").

Plaintiff would have this Court believe that its investigator, Guardeley, Limited's highly technical methods used to identify IP addresses from which allegedly infringing activity took place are highly accurate, but scientific studies have shown that similar software produces a large number of false positives. A recent study performed by the Department of Computer Science and Engineering at the University of Washington determined that "copyright holders utilize inconclusive methods for identifying infringing BitTorrent users. [The Researchers] were able to generate hundreds of DMCA takedown notices for machines under [their] control at the University of Washington that were not downloading or sharing any content." Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks –or– Why My Printer Received a DMCA Takedown Notice*, 3rd USENIX Workshop on Hot Topics in Security 2008, (July 29, 2008) http://www.usenix.org/event/hotsec08/tech/full_papers/piatek/piatek.pdf. Specifically, the article concludes:

> [W]e find that it is possible for a malicious user (or buggy software) to implicate (frame) seemingly any network endpoint in the sharing of copyrighted materials. We have applied these techniques to frame networked printers, a wireless (non-NAT) access point, and an innocent desktop computer, all of which have since received DMCA takedown notices but none of which actually participated in any P2P networks.

*Id.*

Furthermore, Guardeley, Limited makes no accounting for actions engaged in by third parties using Defendants' networks.  As one court noted in a similar case:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) Defendants.

*BMG Music v. Does 1-203*, No. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

In sum, Plaintiff is attempting to obtain detailed information about Doe 1080 and other Internet subscribers without even being able to create a prima facie record to support its allegations that Doe 1080, or any of the Defendants, engaged in or contributed to copyright infringement.  As such, the Subpoena should be quashed.

### III.    CONCLUSION

Plaintiff has demonstrated that it is far more interested in obtaining Defendants' contact information for use in extracting large settlements than the formalities of the legal process and privacy interest of the affected individuals.  Plaintiff has repeatedly misled the court in its representations supporting joinder of the Defendants and obtaining early discovery.  This Court is not the proper venue for this action and does not possess personal jurisdiction over Doe 1080. Plaintiff's joinder of Defendants is improper because Plaintiff's claims do not arise out of the same transaction, occurrence, or series thereof, and it prejudices the Defendants while undermining judicial economy.  Plaintiff's Subpoena should be quashed for lack of personal jurisdiction over Defendant, and because Plaintiff misled this Court in obtaining an Order granting early discovery.

WHEREFORE, premises, considered, Doe 1080 respectfully requests that this Court:

(a) Dismiss Defendant John Doe 1080 from this case for lack of personal jurisdiction;

(b) Sever and dismiss and sever all Defendants pursuant for lack of personal jurisdiction, and/or misjoiner and to and require Plaintiff to bring individual actions against each Defendant, if it chooses to do so, in the appropriate venue;

(c) Quash the Subpoena pursuant to Federal Rule of Civil Procedure 26;

(d) Grant such other and further relief to which Doe 1080 may justly be entitled.

Respectfully submitted,

TAMAROFF & TAMAROFF, P.A.
The Alfred I. DuPont Building
169 East Flagler Street, Suite 1633
Miami, Florida 33131
Tel: (305) 403-2020
Fax: (305) 403-2021
dan@tamarofflaw.com

By: __/s/ Daniel F. Tamaroff_____.
**DANIEL F. TAMAROFF**
Florida Bar No. 92083
dan@tamarofflaw.com
**DAVID F. TAMAROFF**
Florida Bar No. 92084
david@tamarofflaw.com
***Attorneys for John Doe 1080***

## CERTIFICATE OF COMPLIANCE WITH N.D. Fla. Loc. R. 3.01(g)

     I have conference with counsel for the opposing party in a good faith effort to resolve the issues raised in this Motion and we were unable to agree on the resolution of the Motion.

By:  /s/ Daniel F. Tamaroff            .

**DANIEL F. TAMAROFF**

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 20th day of April, 2012, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

By:  /s/ Daniel F. Tamaroff            .

**DANIEL F. TAMAROFF**
